Argued January 22, affirmed February 27, 1952

## DOWNING *v.* GODDARD ET AL. and WESTERN DEVELOPMENT CO.

### 241 P. 2d 104

*Frank B. Reid,* of Eugene, argued the cause for appellant. With him on the brief was Clyde N. Johnston, of Eugene.

*Ronald W. Husk* argued the cause for respondent. On the brief were Harris, Butler & Husk, of Eugene.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

## LATOURETTE, J.

This is an appeal by plaintiff from a decree declaring the rights of the defendant, Western Development Co., Inc., hereinafter referred to as "the company", arising out of an attachment of a tractor, paramount to the rights of plaintiff.

By his complaint, plaintiff seeks a reformation of a certain bill of sale executed by him to Orval Goddard, one of the defendants, claiming that said bill of sale was in fact a chattel mortgage, and that "through a mutual mistake of plaintiff and defendant, Orval Goddard, the said purported bill of sale does not truly set out or express what were to be the legal consequences of said agreement, in this, to-wit: That the purported bill of sale fails to set out or give to the plaintiff any chattel mortgage upon said tractor and equipment for the payment of the purchase price thereof,". The bill of sale, so far as pertinent, follows:

"KNOW ALL MEN BY THESE PRESENTS: That Charles J. Downing, hereinafter known as the First Party, for and in consideration of the sum of Thirteen Thousand Five Hundred Dollars ($13,-500.00) to be paid in the manner hereinafter set forth do by these presents bargain, sell and deliver unto Orval Goddard, hereinafter known as the second Party, his Executors, Administrators and

Assigns, the following described personal property, to-wit:

"One TD Interstate Tractor with Carco Drum and Isaacson Blade and an I. V. Arch, said Tractor bearing Motor No. TD 18—TDR 677OT7BJ.

"To have and to hold the same unto the said Second Party, his Executors, Administrators and Assigns forever.

"And I hereby covenant with the Second Party that I am the lawful owner of said goods and chattels, that they are free from all incumbrance whatsoever, and that I have good right to sell the same as aforesaid, and that I will, and my Executors and Administrators, shall warrant and defend the title thereto unto the said Second Party, his Administrators, Executors and Assigns, against the lawful claims, and demands of all persons whomsover.

"The terms and conditions upon which the payment for said above described personal property is made are as follows, to-wit: The Second Party shall use said Tractor in a logging operation in delivering logs to the McFarland Tie and Manufacturing Company at Mapleton, Oregon, and the Second Party shall pay to the First Party at the rate of $3.00 per M for all lumber manufactured by said McFarland Tie and Manufacturing Company until the entire amount of $13,500.00 has been fully paid.

"As additional security for the payment of said money the Second Party hereby pledges unto the First Party the following Assignment, Note and Mortgages.

"1. A note for $2,543.46 dated April 7th, 1948 from Claude F. Wiebke and Rheta A. Wiebke, his wife, to Orval Goddard, the Second Party herein, and upon which there has been paid to date $786.13.

"2. A note and mortgage dated January 10th, 1948 in the original sum of $3,060.37 from Claude W. [sic] Wiebke and Rheta A. Wiebke, his wife, to Vancel Knight and Bernice Knight, his wife.

Said note and mortgage having been heretofore assigned on the 21st day of April, 1948, to Orval Goddard, Second Party herein and that said note and mortgage will be subject to the terms of said Assignment.

"3. A note and mortgage from Claude F. Wiebke and Rheta A. Wiebke, his wife, to Orval Goddard, Second Party herein, for $3,400.00 dated March 25th, 1948.

"It being specifically understood that the Assignments herein provided and the paper hereby assigned shall be held by the First Party as security for the payment herein provided for said tractor and to be used only in the event of the failure of the Second Party herein to make the payments upon said tractor as herein provided.

"That when all of said money has been fully paid under the terms of this Bill of Sale, to-wit: The sum of $13,500.00, the said collateral security shall be surrendered to the Second Party herein.

> "/s/ Chas. J. Downing
> "/s/ Orval Goddard"

Goddard took possession of the tractor and later borrowed the sum of $2,500 from the company. Defendant Goddard failed to meet his obligation to the company, whereupon it sued him and attached the tractor in controversy. The real question in this appeal is whether or not the company's attachment took preference and precedence over any rights that plaintiff might have had in the tractor.

The gist of plaintiff's complaint as to the nature of the transaction between himself and Goddard may be found in paragraph IV of the complaint, which follows:

"That prior to the execution of said purported bill of sale and the delivery to the plaintiff of said notes and mortgages, and during the negotiations

between the plaintiff and the defendant, Orval Goddard, and as to the terms thereof, it was agreed between the plaintiff and the defendant, Orval Goddard, that the Plaintiff would transfer to the defendant, Orval Goddard, said tractor and equipment hereinabove described and was to receive a chattel mortgage back on said tractor in addition to the assignment and delivery of said notes and mortgages as security for the transfer to the defendant, Orval Goddard, of said tractor and equipment; and in addition thereto was to be paid at the rate of $3.00 per M for logs delivered by the defendant, Orval Goddard, to the McFarland Tie and Manufacturing Co. of Mapleton, Oregon; and in addition thereto was to receive any and all payments made upon the notes specified in paragraphs 1, 2 and 3 in said purported bill of sale hereinabove set out and that these payments were to be applied upon the note for $13,500.00, * * * *.''

The prayer of the complaint in part follows:

''WHEREFORE, the plaintiff prays that the Court reform the said hereinabove described purported bill of sale from the plaintiff to the defendant, Orval Goddard, to the effect that in addition to said purported bill of sale and promissory note in the sum of $13,500.00, that the plaintiff be decreed a chattel mortgage as of the date of said bill of sale conforming to the terms of the agreement hereinbefore set forth between the plaintiff and the defendant, Orval Goddard, and according to the terms of the promissory note specifically set forth in Paragraph IV hereinabove and that said chattel mortgage be foreclosed * * * *.

'' * * * * * *

''That the plaintiff further prays that the defendant, Western Development Co., an Oregon Corporation, be required to set up what, if any, claim or interest they may have by reason of the writ of attachment described in Paragraph XII of this complaint and that in any event and in all, such

claim shall be decreed to be subservient to the rights of the plaintiff as found by this Court by any decree that may be entered herein.''

By answer, the defendant company, after certain admissions and denials, set up its debt against defendant Goddard, and the commencement of action thereon and the steps leading up to the attachment of the tractor by the sheriff, and also made the following allegation:

''That at and at all times prior to the time of such levy of attachment, this answering defendant had no knowledge whatsoever, either actual or constructive of any claim of plaintiff or of anyone other than the said Orval Goddard to said personal property or any part thereof or of any fact or circumstances whatsoever in connection therewith or with reference thereto other than that said Orval Goddard was the owner and in possession thereof. That at and during all the dates and times herein mentioned this answering defendant did act in good faith.''

The defendant company prevailed at the trial, hence this appeal by plaintiff.

At the outset, it is difficult to comprehend what legal gymnastics one would have to engage in to convert a bill of sale executed by a seller into a chattel mortgage in his favor, as plaintiff seeks to do in his complaint. Under certain situations, a bill of sale given to secure a loan of money may be construed as a chattel mortgage, but such is not the case before us.

Following is Assignment of Error No. I:

''That the Court erred in holding that the purported Bill of Sale dated June 1, 1948 was an absolute Bill of Sale and had the effect of conveying title from Appellant to the purchaser Orval Goddard.''

Plaintiff's complaint, on its face, sustains the court's ruling in this regard.

It is alleged at least twice in the complaint that plaintiff was to give Goddard a bill of sale to the tractor in question, and Goddard was to execute back to plaintiff a chattel mortgage on the same. This, of course, imports the vesting of title to the tractor in Goddard because, unless the title passed, he could not execute a chattel mortgage on the same. There is no contention in the pleadings that the bill of sale was a conditional bill of sale, i.e., that title to the tractor was reserved in the seller. The bill of sale, on its face, negatives such an idea.

Plaintiff's testimony was rather inconsistent. He would blow hot and cold: in one part he testified that title in the tractor was to remain in him until the full debt was paid, and in another part, he testified that he was to receive a chattel mortgage back to protect himself. He first testified as follows:

"Q  What about the caterpillar tractor itself? What was the agreement as to it? Where was the title to be?

"A  I was to hold the title. Mr H V Johnson wrote up this.

"* * * * * *

"Q  And before you went to Johnson's office you understood you were to get a chattel mortgage on the property?

"A  Yes, sir.

"Q  And that was expressed to Mr H V Johnson when you were there?

"A  Yes, sir."

Mr. Johnson, the attorney who represented both parties in drawing up the bill of sale, testified that in drawing up this instrument he complied with the

requests of the parties, and that nothing was said about a chattel mortgage or title being retained by the seller. A portion of his testimony follows:

"Q Was any statement made regarding whether the plaintiff should have—whether Mr Downing should have a chattel mortgage on the property?

"A Not to my recollection.

"* * * * * *

"Q Then the only security that Mr. Downing was to have in so far as you know in the transaction was the security of these pledged notes and mortgage and no chattel mortgage on the caterpillar tractor?

"A That was the only outside security, other than the $3 per thousand of the logs that were to be delivered to the MacFarlane Tie & Lumber Company, or Tie and Manufacturing Company at Mapleton. There was a discussion as to that, and it was agreed that Goddard was to pay $3 per thousand, and roughly, the way it figured out, there would be a little more $4,000, or in the neighborhood of three or four thousand dollars that if he defaulted and the notes were used, that he would still owe some $3,000 if he didn't pay anything, three or four thousand.

"Q Do you believe that if you had been instructed to prepare a chattel mortgage that you would have done it?

"A If I had been instructed to prepare a chattel mortgage I would have prepared one.

"* * * * * *

"Q How did it happen? They just came in and told you he was buying the cat from Downing and asked you to draw up some sort of a document?

"A Well, he asked me to draw the bill of sale."

Mr. Goddard, the purchaser, testified as follows:

"Q Now, when you signed this document up at H V Johnson's office, state whether or not it was your understanding that Downing was to have a

mortgage on this property and retain title until the property was paid for?

"A There was no definite statement made as to a mortgage.

"**⁂** **⁂** **⁂** **⁂** **⁂**

"Q During the preliminary negotiations for the sale of this tractor was anything said about Mr Downing retaining the title to the tractor until the purchase price was fully paid?

"A Not that I recall."

■ The bill of sale, together with the allegations of plaintiff's complaint and the other evidence in the case, all indicate that title to the tractor passed to Goddard.

Assignment of Error No. II follows:

"The Court erred in holding that the Respondent as an attaching creditor of the Defendant Orval Goddard was a bona fide purchaser under Section 7-207 O.C.L.A."

■ There is no question, from the record made, that the company proved all steps leading up to a valid attachment. The only argument made by plaintiff under this assignment is that *Metropolitan Inv. Etc. Co. v. Schouweiler*, 83 Or 695, 163 P 599, 164 P 370, is authority that "the attaching creditor must go forward and assume the burden of establishing by proof that he made inquiry as to the condition of the title of the property being attached." This case is not in point because there is nothing in that case to support plaintiff's contention. On the contrary, the Metropolitan Inv. Etc. Co. case is authority for the proposition that it is necessary for the attaching creditor to allege and prove that he had no notice of any outstanding third party claim, lien or interest; and, as shown in that case, the attaching creditor failed

for want of sufficient proof to support an allegation of that character. Here, the same situation does not exist. The defendant Western Development Co. not only alleged that it had no notice of plaintiff's interest but supported the allegation with adequate proof.

In the case at bar, Goddard had title to, and possession of, the tractor. On the strength of such title and possession, he borrowed the $2,500 from the company, at which time he represented to its managing director that he owned the tractor in question. Following is his testimony:

"Q  Did Mr Goddard convey any idea to you about his owning the equipment?
"A  Yes, definitely so. I inquired particularly about that, because naturally I was concerned in making a loan of $2500 to know who this equipment belonged to and I was given to understand very definitely in answer to specific questions that it was Mr Goddard's property."

■ In the absence of notice or facts warranting inquiry on the company's part, it was not incumbent upon the company, under the circumstances, to run down undisclosed equities.

■ Title to the tractor having passed to Goddard, it, therefore, follows that when the company attached the tractor, it having no knowledge, according to the record, of any outstanding equities in the seller, Downing, but believing that Goddard owned the tractor, it became a bona fide purchaser under the statute, and its attachment took precedence over Downing's alleged equities. Affirmed.